UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T. B.-P., | Case No. 20-cv-02088-JCS |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR AWARD OF BENEFITS** |
| ANDREW SAUL, | |
| Defendant. | |
| | Re: Dkt. Nos. 17, 27 |

## I. INTRODUCTION

On September 21, 2016, Plaintiff T. B.-P.[1] applied for disability under Title II of the Social Security Act alleging disability beginning June 1, 2014, and later amended the alleged onset date to May 18, 2015. Admin. Record ("AR," dkt. 13) 42-43, 93, 219-31. The claim was denied initially and upon reconsideration, and Cheryl Tompkin, an administrative law judge ("ALJ"), held a hearing on October 15, 2018. AR 35-91, 150-54, 156-61. On April 15, 2019, the ALJ denied Plaintiff's application and on March 2, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final decision of the Defendant Commissioner of the Social Security Administration ("Commissioner"). AR 1-6, 12-34. After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only her initials.

the Commissioner's Motion for Summary Judgment, and remands for an award of benefits.[2]

## II. BACKGROUND

### A. The Five-Step Framework

Disability insurance benefits are available under the Social Security Act (the "Act") when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). A claimant is only found disabled if their physical or mental impairments are of such severity that they are not only unable to do their previous work but also "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a sequential, five-part evaluation process to determine whether a claimant is disabled under the Act. *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Id.* "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

At step one, the ALJ considers whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in such activity, the ALJ determines that the claimant is not disabled, and the evaluation process stops. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ continues to step two. *See id.*

At step two, the ALJ considers whether the claimant has "a severe medically determinable physical or mental impairment" or combination of such impairments that meets the regulations' twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have

---

[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

a severe impairment, disability benefits are denied. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that one or more impairments are severe, the ALJ proceeds to the next step. *See id.*

At step three, the ALJ compares the medical severity of the claimant's impairments to a list of impairments that the Commissioner has determined are disabling ("Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If one or a combination of the claimant's impairments meets or equals the severity of a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the analysis continues. *See id.*

At step four, the ALJ must assess the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is "the most [a claimant] can still do despite [that claimant's] limitations . . . based on all the relevant evidence in [that claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The ALJ then determines whether, given the claimant's RFC, the claimant would be able to perform their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the claimant is able to perform their past relevant work, then the ALJ finds that they are not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is unable to perform their past relevant work, then the ALJ proceeds to step five. *See id.*

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [the claimant's] identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). If the Commissioner meets this burden, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v). Conversely, the claimant is disabled and entitled to benefits if there are not a significant number of jobs available in the national economy that the claimant can perform. 20 C.F.R. § 404.1560(c).

**B.     Supplemental Regulations for Determining Mental Disability**

The Social Security Administration has supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. First, the Commissioner

must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. *See* 20 C.F.R. § 404.1520a(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. *See* 20 C.F.R. § 404.1520a(d)(3).

Appendix 1 provides impairment-specific "Paragraph A" criteria for determining the presence of various listed mental impairments, but all listed mental impairments share certain "Paragraph B" severity criteria in common (and some have alternative "Paragraph C" severity criteria). *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00. Any medically determinable mental impairment—i.e., one that satisfies the Paragraph A criteria of one or more listed mental impairments—is sufficiently severe to render a claimant disabled if it also satisfies the general Paragraph B criteria, which requires that a claimant's mental disorder "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* at 12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* at 12.00(F)(2)(d). A claimant with an "extreme" limitation is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at 12.00(F)(2)(e).

This evaluation process is to be used at the second and third steps of the sequential evaluation discussed above. Social Security Ruling 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). If the Commissioner

4

determines that the claimant has one or more severe mental impairments that neither meet nor are equal to any listing, the Commissioner must assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520a(d)(3). This is a "mental RFC assessment [that is] used at steps 4 and 5 of the sequential evaluation process [and] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ." Social Security Ruling 96-8p, 1996 WL 374184, at *4.

### C.    Factual Background[3]

Plaintiff suffers from both physical and mental impairments. Physically, she suffers from pain all over her body, particularly in her back, knees, and hip. AR 48-49, 269, 1256. Mentally she suffers from anxiety, depression, and panic attacks. AR 49-53, 353, 384, 1765-66.

Plaintiff was working in an Amazon warehouse in April 2014 when she began feeling a stabbing pain in her right hip, which she believed was caused by the fast-paced walking and climbing she was required to do for her job. AR 1377. She was initially found to be unable to return to work at all, then later was placed on modified duty. AR 1280, 1283. Because she felt she needed more time to heal, she took a personal leave instead of performing the modified duties. AR 1377, 2008. After two months of leave, she returned to modified duties, but said the constant walking was unbearable. AR 1376-77. When she had exhausted her modified duty time, she left Amazon and eventually applied for Social Security disability benefits. AR 219-31, 1414-16.

#### 1.    Medical Opinions

##### a.    Physical Impairments

In October 2015, as part of her worker's compensation case against Amazon, Plaintiff was evaluated by Dr. Zheng, her primary treating physician. AR 1442-46. Dr. Zheng found that Plaintiff has a limited range of motion of the spine, tenderness, decreased sensation in the right thigh, positive straight leg raising test, and pain with certain maneuvers. AR 1443-44. Dr. Zheng

---

[3] The Court assumes the parties are familiar with the Administrative Record and will not attempt to summarize the entirety of the record here. Instead, this section is meant merely to provide context for the ensuing discussion about the particular issues raised by the parties.

1  concluded that Plaintiff should be restricted to lifting no more than 15 pounds and no repetitive

2  bending or twisting.  AR 1444.

3      In March 2017, in connection with her application for Social Security disability benefits,

4  Plaintiff underwent an internal medicine consultative examination with Dr. Cain.  AR 1252-57.

5  Dr. Cain found some limited range of motion in Plaintiff's neck and back, positive straight leg

6  raising test, tenderness, mild weakness in Plaintiff's pinch and grip strength, and mild weakness in

7  all four extremities.  AR 1252, 1254, 1257.  Dr. Cain concluded that Plaintiff may have difficulty

8  with: (1) lifting or carrying more than 15 pounds; (2) handling objects; (3) prolonged sitting; and

9  (4) prolonged standing or walking.  AR 1257.  Dr. Cain also assessed environmental restrictions

10  for Plaintiff.  AR 1257.

11      The state agency reviewing physician at the initial level, Dr. Bailey, found Dr. Cain's

12  assessment "somewhat consistent with the medical evidence on file" and found that Plaintiff could

13  lift and carry 10 pounds frequently and 20 pounds occasionally and could sit, stand, or walk for

14  about six hours each in an eight-hour workday.  AR 113-14.  Dr. Bailey also assessed postural and

15  environmental limitations.  AR 114-16.  On reconsideration, state agency reviewing physician Dr.

16  Herman agreed with Dr. Bailey's assessment.  AR 138-41.

17                      **b.  Mental Impairments**

18      In March 2017, Plaintiff underwent a psychological consultative examination with Dr.

19  Ojelade.  AR 1246-50.  Dr. Ojelade did not find any impairment in Plaintiff's cognitive

20  processing, memory, insight, or judgment, except for a mild impairment in Plaintiff's ability for

21  abstraction.  AR 1249.  Dr. Ojelade also found Plaintiff to have moderate impairments in social

22  interactions and the ability to interact appropriately with the public.  AR 1248, 1250.  Plaintiff

23  reported moderate impairment in her daily functioning to Dr. Ojelade, but Dr. Ojelade noted that

24  Plaintiff's clinical presentation suggested only a mild impairment in this area.  AR 1248, 1250.

25  Dr. Ojelade found that Plaintiff did not put forth genuine effort on the mental status exam and

26  appeared to exaggerate her symptoms and therefore gave Plaintiff a primary diagnosis of

27  malingering.  AR 1249-50.  Dr. Ojelade did not find any psychological diagnosis that would

28  prevent Plaintiff from "appropriately adapting to the stressors resulting from the demands of being

in a work environment, daily functioning, and social interactions." AR 1250.

The state agency reviewing physician at the initial level, Dr. Hughes, found Dr. Ojelade's assessment "somewhat consistent with the medical evidence on file" and found that Plaintiff has a mild limitation in understanding and memory, explaining that "Claimant can remember locations and work-like procedures, short and simple instructions and many detailed instructions however; Claimants [sic] ability to retain detailed instructions will wax and wane secondary to psychological issues affecting concentration." AR 114, 117. Dr. Hughes also found mild limitations in Plaintiff's ability to maintain concentration, persistence, and pace, including that Plaintiff would "struggle to carry out detailed instructions due to anxiety and depression." AR 118. Dr. Hughes also found a moderate limitation in Plaintiff's social interaction abilities and a mild limitation in Plaintiff's ability to adapt. AR 118-19.

On reconsideration, Dr. Caruso-Radin found no limitations in Plaintiff's understanding and memory or ability to adapt but did find moderate limitations in Plaintiff's ability to maintain concentration, persistence, and pace and Plaintiff's social interaction abilities. AR 141-43. In particular, Dr. Caruso-Radin found a moderate limitation in Plaintiff's ability to carry out detailed instructions, explaining that "[Plaintiff] can understand, remember, apply knowledge and carry out a 2-step command involving simple instructions and maintain [concentration, persistence, and pace] for such." AR 142.

### 2. Plaintiff's Testimony

In connection with her application, Plaintiff submitted a function report explaining that she is unable to work because she cannot focus and suffers from severe pain and constant aches. AR 269-77. She said she has difficulty using the toilet because it hurts to bend, sit, and get up. AR 270. She also indicated that it takes longer for her to bathe and dress because of her conditions, she is no longer interested in taking care of her hair, and she does not shave as often as she used to prior to her injuries. AR 270. She cooks less now because it takes longer to cook and is painful. AR 271. She said she rarely does housework because her body aches and her mood is bad. AR 271-72. When she does do chores, they take all day. AR 271. Plaintiff rarely drives and goes shopping once every three weeks. AR 272. She said she needs reminders to take care of herself

and take her medicines and she is unable to handle money because she is very forgetful and gets confused.  AR 271-73.  She indicated no hobbies or social activities.  AR 273.  Plaintiff checked boxes indicating difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair-climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and using her hands.  AR 274.  Plaintiff said she could carry five pounds for 20 feet and could only walk 50 yards before needing to rest until the next day.  AR 274.  She said she could pay attention for 30 minutes but does not finish what she starts, cannot follow instructions well, does not get along well with authority figures, does not handle stress or changes in routine well, and suffers from severe anxiety.  AR 274.

At the hearing, Plaintiff testified that her work-preclusive pain comes mainly from her back, knee, and hips, although she also has tightness in her neck and shoulders.  AR 48-50.  She testified that she has to move around a lot because of her pain.  AR 64.  Although she is always in pain, standing up makes her back pain worse.  AR 66-67.  She can bear standing for up to 45 minutes to an hour, but she tries to limit her time standing to no more than 15 minutes at a time because of the pain.  AR 67-70.  Plaintiff said she could not stand for 15 minutes at a time off and on all day.  AR 70.  She also testified that she is emotionally unstable and has intense anxiety and panic attacks that last half an hour or more about 20 times per month.  AR 50-52.  She testified that she has been admitted for psychiatric hospitalization twice, once for three days and once for longer.  AR 55-56.

Plaintiff also testified that she had recently been traveling to Georgia to be with her mother, who was deathly ill.  AR 54.  Plaintiff explained that traveling to Georgia was extremely painful for her and she had to use a wheelchair in the airport, move around on the flight whenever allowed, take Tylenol, and spend a couple days recuperating after traveling.  AR 72-74.

While she was in Georgia, Plaintiff did not have insurance, and no longer received her pain medication or anxiety medication prescriptions.  AR 54, 56-57, 62.  Instead, she went to the emergency room for treatment for her knee pain, back pain, panic attacks, anxiety and difficulty sleeping.  AR 54.  Plaintiff obtained Medi-Cal insurance shortly before the hearing and planned to obtain her old prescriptions again soon.  AR 57-58, 63.  She had received some pain relief from

her pain medications, but not full relief, and her anxiety medications did not make her less anxious but did allow her to sleep.  AR 57, 63.  She received minimal relief from over-the-counter medications.  AR 63.

### 3.  Lay Witness Testimony

Plaintiff's daughter submitted a third-party function report that was very similar to the report submitted by Plaintiff.  AR 278-85.  Her daughter said that personal care activities take Plaintiff a long time, that Plaintiff needs reminders to take care of herself and take her medicines, and that Plaintiff only cooks simple food and hardly ever does housework or yardwork.  AR 279-81.  She said that Plaintiff rarely shops or engages in social activities and cannot handle money because she has trouble concentrating and gets confused.  AR 281-83.  She checked boxes indicating Plaintiff has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair-climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others.  AR 283.  She said that her mother is in pain and so everything takes her a long time and that her mother could walk 50 to 100 yards before needing a 10 to 15-minute rest.  AR 283.  Plaintiff's daughter said that Plaintiff could pay attention for 15 to 20 minutes but could not follow instructions and does not handle changes in routine well because she is very forgetful.  AR 283-84.  She said that Plaintiff is very afraid and nervous and cries a lot.  AR 284.

### D.  The ALJ's Decision

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date.  AR 17.

At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine (lumbar spondylosis with radiculopathy and chronic low back pain), osteoarthritis of the bilateral feet, hip bursitis, degenerative changes of the knees and affective disorder (alternatively described as depression and adjustment disorder).  AR 18.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any Listing.  AR 19.  In particular, the ALJ found that: (1) Plaintiff's degenerative disc disease does not meet or equal the criteria for

Listing 1.04; (2) Plaintiff's osteoarthritis, bursitis and degenerative changes of the knees do not meet or equal the criteria for Listings 1.02 or 14.09; and (3) Plaintiff's affective disorder does not meet or equal the criteria for Listings 12.04 or 12.06. AR 19. With regard to Listings 12.04 and 12.06, the ALJ considered the "paragraph B" criteria for mental impairments and found that Plaintiff has a moderate limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting and managing herself. AR 19-20.

At step four, the ALJ found that Plaintiff has the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant is able to lift or carry 15 pounds. The claimant can sit, stand, or walk six hours in an eight-hour workday. The claimant can frequently climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds. The claimant can frequently kneel and crawl and occasionally stoop and crouch. The claimant can frequently handle and finger bilaterally. The claimant should avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. The claimant is able to understand, remember, and carry out simple, routine tasks, involving simple, work-related decisions, and is able to adapt to routine work place changes. The claimant can interact with supervisors and co-workers on a superficial/non-collaborative basis. The claimant can tolerate brief, occasional contact with the public.

AR 20. In making this assessment, the ALJ did not fully credit Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, finding that they were "not entirely consistent with the medical evidence and other evidence in the record." AR 21. With regards to Plaintiff's physical limitations, the ALJ gave great weight to the opinions of Plaintiff's treating physician, Dr. Zheng, the consultative examiner, Dr. Cain, and the state agency reviewing physicians, Dr. Bailey and Dr. Herman. AR 25. The ALJ "adopted the opinions of Drs. Cain and Zheng with regards to the claimant's lift and carry abilities and the opinions of Drs. Bailey and Herman for the postural, manipulative, and environmental limitations, as such opinions are the most concrete and restrictive overall." AR 25. As for Plaintiff's mental limitations, the ALJ gave great weight to the opinions of both the consultative examiner, Dr. Ojelade, and the state agency reviewing physicians, Dr. Hughes and Dr. Caruso-Radin. AR 25-26. The ALJ stated that she adopted the limitations assessed by Dr. Caruso-Radin because they were more complete than those

United States District Court
Northern District of California

assessed by Dr. Hughes, and more restrictive and consistent with the record than those assessed by Dr. Ojelade. AR 26. The ALJ gave "some weight" to the testimony of Plaintiff's daughter, but found that Plaintiff was not as limited as her daughter alleged. AR 26-27. Based on the RFC, and the testimony of a Vocational Expert ("VE") at the hearing, the ALJ found that Plaintiff could not perform her relevant past work. AR 28, 81-84.

At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including Collator Operator, Photocopying Machine Operator, and Advertising Material Distributor. AR 29-30, 81-84. The ALJ therefore found Plaintiff not disabled. AR 30.

## III.    ISSUES FOR REVIEW

1. Whether the ALJ erred by failing to provide specific and legitimate reasons for rejecting portions of the medical opinions of the consultative examiner, Dr. Cain, and the state agency reviewing physicians, Dr. Hughes and Dr. Caruso-Radin.

2. Whether the ALJ erred by accepting the VE's opinion that certain occupations defined as "light work" by the Dictionary of Occupational Titles (DOT) were compatible with a limitation to lifting no more than 15 pounds.

3. Whether the ALJ erred by failing to provide specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony.

4. Whether the ALJ erred by failing to provide germane reasons for discounting the lay witness testimony of Plaintiff's daughter.

5. If the ALJ erred, whether the Court should remand for further proceedings or for award of benefits.

## IV.    ANALYSIS

### A.    Standard of Review

District courts have jurisdiction to review the final decisions of the Commissioner and may affirm, modify, or reverse the Commissioner's decisions with or without remanding for further hearings. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3). When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are

free of legal error and supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and that is based on the entire record. *Richardson v. Perales*, 402 U.S. 389, 401. (1971). "'Substantial evidence' means 'more than a mere scintilla,' but 'less than a preponderance.'" *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal citation omitted). Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)). In reviewing the record, the Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

## B. The ALJ's Consideration of Medical Opinion Testimony

### 1. Legal Standard

The Social Security Act tasks the ALJ with weighing medical testimony and resolving conflicting and ambiguous medical testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's discretion in this area is not entirely unfettered, however. The ALJ is generally required to give more weight to the opinions of physicians that treat the claimant than to the opinions of those who do not. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Likewise, the ALJ generally must give more weight to the opinions of physicians who personally examine the claimant, as compared to those who merely review the claimant's medical records. *Id.*

This does not mean, however, that the opinion of a treating physician is necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Instead, an ALJ may reject the opinion of a treating physician, even if the physician's opinion is uncontradicted, if the ALJ provides "clear and convincing" reasons for doing so. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by another doctor, the standard is lowered, and the treating physician's opinion may be rejected if the ALJ provides "specific and legitimate reasons supported by substantial evidence." *Id.* (internal quotation marks omitted). The ALJ meets this

burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "[B]road and vague" reasons do not suffice to meet the specific and legitimate standard. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

The same standards apply when the ALJ wishes to reject the opinion of an examining physician. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone is insufficient to reject the opinion of an examining or treating physician, though a non-examining physician's opinion may be persuasive when supported by other factors. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 404.1527(c)(4). On the other hand, brief, conclusory, contradictory, or unsupported opinions generally are less persuasive. *See Tonapetyan*, 242 F.3d at 1149 ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."); *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) ("A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes."); *but see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as a basis for the rejection of an examining physician's conclusions.").

### 2. Analysis

Plaintiff argues that the ALJ erred by rejecting portions of the opinions of both the physical consultative examiner, Dr. Cain, and the mental state agency reviewing physicians, Dr. Hughes and Dr. Caruso-Radin, without giving any reason for doing so and despite according both opinions "great weight." *See* Pl.'s Am. Mem. (dkt. 23) at 4-8.

### a. Dr. Cain

Dr. Cain performed an internal medicine consultative examination on Plaintiff in March

2017 and found limited range of motion in Plaintiff's neck and back, positive straight leg raising test, tenderness, mild weakness in Plaintiff's pinch and grip strength, and mild weakness in all four extremities. AR 1252, 1254, 1257. Based on these findings, Dr. Cain concluded that Plaintiff may have difficulty with: (1) lifting or carrying more than 15 pounds; (2) handling objects; (3) prolonged sitting; and (4) prolonged standing or walking. AR 1257. Dr. Cain also assessed environmental restrictions for Plaintiff. AR 1257.

The ALJ gave Dr. Cain's opinion "great weight" because it was consistent with Dr. Zheng's examination over a year earlier and was consistent with the examinations, treatments, and imaging in the record. AR 25. The ALJ therefore "adopted the opinions of Drs. Cain and Zheng with regards to the claimant's lift and carry abilities and the opinions of Drs. Bailey and Herman for the postural, manipulative, and environmental limitations, as such opinions are the most concrete and restrictive overall." AR 25. While purporting to give great weight to all of these opinions, and purporting to accept the most restrictive limitations from each of the opinions, AR 25, the ALJ did not address the conflict between Dr. Cain's opinion that Plaintiff may have difficulty with prolonged sitting, standing, and walking, AR 1257, and Dr. Bailey's opinion that Plaintiff could sit, stand, or walk for up to six hours each in an eight-hour workday, AR 114. Instead, the ALJ silently accepted the less restrictive opinion of the non-examining physician and rejected the more restrictive opinion of the examining physician, without providing any reason for doing so. *See* AR 20. This was error. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (finding the ALJ erred where the ALJ did not give any reason for rejecting a doctor's assessment of the plaintiff's capacity for standing, lifting, carrying, and sitting); *Reddick*, 157 F.3d at 725 (finding the ALJ meets the specific and legitimate standard[4] "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); *Goytia v. Berryhill*, No. 14-cv-04498-EJD, 2017 WL 1150524, at *6 (N.D. Cal. Mar. 28, 2017) ("Having accepted Dr. Le's assessment of Plaintiff's moderate limitations, the

---

[4] Although neither party addresses which standard applies to Dr. Cain's opinion, the Court finds that the specific and legitimate standard applies since Dr. Cain's opinion was contradicted by Dr. Bailey's opinion. *Lester*, 81 F.3d at 830-31; AR 113-14, 1257.

ALJ was required to incorporate those limitations into an RFC at step four of the sequential analysis.").

The Commissioner offers two arguments in defense of the ALJ's decision. First, the Commissioner argues that the ALJ was justified in rejecting Dr. Cain's opinions because the state agency reviewing physicians found that Plaintiff could sit, stand, and walk for up to six hours in an eight-hour workday. Def.'s Mot. (dkt. 27) at 5-6. Second, the Commissioner argues that the ALJ was entitled to reject Dr. Cain's assessment because it was too vague. *Id.*

The Court rejects both of these arguments, primarily because the ALJ did not actually invoke them. While the ALJ mentioned the state agency reviewing physicians' opinions and noted that Dr. Cain did not specify exactly what she meant by "prolonged" sitting, standing, and walking, the ALJ did not invoke these as reasons to reject Dr. Cain's opinion, saying instead that she gave Dr. Cain's opinion great weight and that she accepted the most restrictive limitations assessed by the various doctors. AR 25. The Commissioner's ability to intuit a potential rationale for the ALJ's decision is insufficient to support the decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ— not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

In addition, even if the ALJ had invoked these reasons, they would be insufficient. The opinions of non-examining physicians are insufficient, standing alone, to discount the opinion of an examining physician. *Tonapetyan*, 242 F.3d at 1149. And while Dr. Cain's opinion did not specify exactly what she meant by "prolonged" sitting, standing, or walking, this lack of clarity is insufficient to reject entirely any limitation on sitting, standing, or walking beyond the limitation to a maximum of six hours each of sitting, standing, or walking in a day, which clearly would allow for "prolonged" sitting, standing, or walking.[5] If the ALJ was truly at a loss for what

---

[5] The Commissioner's citation to *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1005-06 (9th Cir. 2015) is unavailing. *See* Def.'s Mot. at 6. In that case, the court found the ALJ did not err when the ALJ credited a doctor's formal conclusions but did not address the doctor's informal recommendations, such as that the claimant should avoid math or use a calculator. *Rounds*, 807 F.3d at 1005-06. Here, the opinion that the ALJ ignored was part of Dr. Cain's formal conclusions and was tied directly to core elements of the RFC: sitting, standing, and walking. AR 1257.

"prolonged" sitting, standing, or walking meant, but otherwise credited Dr. Cain's opinion, then the appropriate response would be to recontact Dr. Cain for clarification, not to simply ignore the limitation. *See* 20 C.F.R. § 404.1520b(b)(2)(i).[6]

### b. Dr. Hughes and Dr. Caruso-Radin

At the initial level of consideration, the state agency reviewing physician, Dr. Hughes, found that Plaintiff has a mild limitation in understanding and memory, explaining that "Claimant can remember locations and work-like procedures, short and simple instructions and many detailed instructions however; Claimants [sic] ability to retain detailed instructions will wax and wane secondary to psychological issues affecting concentration." AR 117. Dr. Hughes also found mild limitations in Plaintiff's ability to maintain concentration, persistence, and pace, including that Plaintiff would "struggle to carry out detailed instructions due to anxiety and depression." AR 118. Dr. Hughes also found a moderate limitation in Plaintiff's social interaction abilities and a mild limitation in Plaintiff's ability to adapt. AR 118-19.

On reconsideration, Dr. Caruso-Radin found no limitations in Plaintiff's understanding and memory or ability to adapt but did find moderate limitations in Plaintiff's ability to maintain concentration, persistence, and pace and Plaintiff's social interaction abilities. AR 141-43. In particular, Dr. Caruso-Radin found a moderate limitation in Plaintiff's ability to carry out detailed instructions, explaining that "[Plaintiff] can understand, remember, apply knowledge and carry out a 2-step command involving simple instructions and maintain [concentration, persistence, and pace] for such." AR 142.

The ALJ gave both of these opinions "great weight" because she found they were consistent with the record. AR 25-26. The ALJ then stated that she adopted Dr. Caruso-Radin's

---

[6] The Commissioner's argument that Dr. Cain's opinion was so vague it could be rejected out of hand, yet somehow did not create an ambiguity that needed to be resolved is only coherent if one accepts that there was some other reason to reject Dr. Cain's opinion. *See* Def.'s Mot. at 5-6. The Commissioner argues that this reason was that the non-examining physicians' opinions and the medical evidence in the record did not support a limitation on prolonged sitting, standing, or walking. *Id.* Again, the ALJ did not invoke these reasons for rejecting Dr. Cain's opinion, or even say that she was rejecting Dr. Cain's opinion. AR 25. Taking the ALJ at her word that she gave Dr. Cain's opinion great weight, the ALJ either needed to interpret what "prolonged" meant or seek clarification, not simply ignore this limitation.

United States District Court
Northern District of California

1    RFC opinion because it was more complete than Dr. Hughes' RFC opinion.  AR 26.

2            Plaintiff argues that, despite these statements, the ALJ failed to actually incorporate Dr.

3    Hughes' limitation regarding detailed instructions or Dr. Caruso-Radin's limitation to two-step

4    commands involving simple instructions.  Pl.'s Am. Mem. at 7.  The RFC formulated by the ALJ

5    contains the limitation that Plaintiff "is able to understand, remember, and carry out simple,

6    routine tasks, involving simple, work-related decisions." AR 20.  On it's face, this limitation could

7    potentially be interpreted to incorporate the limitations regarding detailed instructions found by

8    Dr. Hughes and Dr. Caruso-Radin.  However, as Plaintiff points out, Pl.'s Am. Mem. at 7-8, two

9    of the jobs that the ALJ found Plaintiff capable of performing, photocopy machine operator and

10   collator operator, have a GED Reasoning Level of 2.  *See* DOT Codes 207.685-014, 208.685-010,

11   *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02A.

12           In order to perform jobs requiring a GED Reasoning Level of 2, an individual must be able

13   to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral

14   instructions." DOT Appendix C, *available at*

15   https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.  By contrast, GED

16   Reasoning Level 1 requires individuals to be able to "[a]pply commonsense understanding to carry

17   out simple one- or two-step instructions."  *Id.*  Plaintiff argues that the limitations described by Dr.

18   Hughes and Dr. Caruso-Radin, especially Dr. Caruso-Radin's limitation to carrying out "2-step

19   command[s] involving simple instructions" are consistent with GED Reasoning Level 1, not GED

20   Reasoning Level 2.  Pl.'s Am. Mem. at 8.  The Court agrees that Dr. Caruso-Radin's limitation is

21   consistent with GED Reasoning Level 1, not GED Reasoning Level 2.[7]  *See Rounds*, 807 F.3d at

22   1003 (finding "an apparent conflict between Rounds' RFC, which limits her to performing one-

23   and two-step tasks, and the demands of Level Two reasoning" which was "brought into relief by

24   the close similarity between Rounds' RFC and *Level One* reasoning." (emphasis in original)).  The

25   ALJ's determination that Plaintiff is able to perform jobs requiring GED Reasoning Level 2,

26

27   _____
     [7] The Court addresses only Dr. Caruso-Radin's limitation, and not Dr. Hughes' limitation, because
     the ALJ explicitly stated that she was adopting Dr. Caruos-Radin's RFC opinions, AR 26, and
28   because the conflict between Dr. Caruso-Radin's limitation and GED Reasoning Level 2 is more
     explicit.

without giving any reason for discounting Dr. Caruso-Radin's opinion, was in error. *Sousa*, 143 F.3d at 1244 (requiring "reference to specific evidence in the medical record" to reject the opinion of a non-examining physician).

In response, the Commissioner does not dispute that the ALJ did not incorporate Dr. Caruso-Radin's limitation to two-step commands involving simple instructions into the RFC. *See* Def.'s Mot. at 9-10. Nor does the Commissioner cite any reasons actually given by the ALJ for rejecting that limitation. *Id.* Instead, the Commissioner once again asserts reasons the ALJ *could* have given. *Id.* (citing Dr. Ojelade's opinion and the treatment record). As stated above, reasons not actually given by the ALJ cannot support the ALJ's decision. *Bray*, 554 F.3d at 1225. The ALJ said she gave great weight to Dr. Caruso-Radin's RFC opinions, provided no reason for discounting those opinions, and said that she was adopting them. AR 26. The ALJ's failure to actually incorporate those opinions into the RFC, as evidenced by the ALJ's finding that Plaintiff could perform jobs requiring GED Reasoning Level 2, was therefore error.

## C. Conflict Between the DOT and the VE's Testimony

### 1. Legal Standard

Once an ALJ has formulated an RFC for an individual, the ALJ relies on two main resources to determine if there are jobs in the national economy that the individual can perform. Social Security Ruling 00-4p, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000). First, the ALJ refers to the DOT, which is essentially a catalog that describes various jobs in the national economy and the skills and abilities required to perform those jobs. *Id.* Because the DOT paints in broad strokes and cannot account for every possible limitation an individual might have, the ALJ may also call upon a VE to provide expert testimony about jobs a hypothetical individual with a specific RFC could perform. *Id.* at *2-3. Whenever there is a conflict between the requirements of a specific job, as described in the DOT, and a VE's testimony about what jobs a hypothetical individual could perform—such as when the DOT describes a job as "light" work but a VE testifies that an individual limited to sedentary work could perform the job—the ALJ must address the conflict, and may only rely on the VE's testimony if the VE's testimony is supported by "persuasive evidence." *Id.* at *2; *Johnson*, 60 F.3d at 1435.

### 2. Analysis

Plaintiff argues that the ALJ erred by failing to properly resolve a conflict between, on the one hand, the DOT's definition of Collator Operator, Photocopying Machine Operator, and Advertising Material Distributor as "light" work, which requires an individual to be able to lift up to 20 pounds at one time, 20 C.F.R. § 404.1567(b) and, on the other hand, the VE's testimony that an individual who could only lift 15 pounds could perform those jobs, AR 83-84. *See* Pl.'s Am. Mem. at 6-7. Plaintiff's argument relies largely on the premise that the VE testified that an individual limited to lifting only 15 pounds was limited to "sedentary" work, and therefore there was a conflict between the DOT's definition of these jobs as "light" and the VE's testimony that an individual limited to sedentary work could perform them. *See id.* This premise is flawed.

When the ALJ asked the VE about an individual with a limitation to lifting only 15 pounds, among other limitations, the VE did initially say that this limitation "would bring [the RFC] down to sedentary." AR 83. However, the VE then immediately said "[e]xcuse me, Judge. Pardon me," indicating that this statement was not accurate. AR 83. The VE then proceeded to testify that an individual with the specified RFC could perform the light jobs at issue and explained that, although the DOT classified these jobs as "light" exertion, in the VE's experience these jobs did not require an individual to actually lift the full 20 pounds. AR 83-84.

In the Court's view, this is not actually a contradiction. "Sedentary" jobs only require an individual to be able lift 10 pounds, whereas "light" jobs require an individual to be able to lift 20 pounds. *See* 20 C.F.R. §§ 404.1567(a)-(b). There is no specific classification for individuals who can lift 15 pounds. *See id.* An individual who can lift 15 pounds has a greater lifting capacity than someone limited to sedentary work, but less lifting capacity than an individual who can do the full range of light work. The appropriate classification for such a person is someone who can do light work except they can only lift 15 pounds, which is exactly what the RFC in this case says. AR 20. Limiting this individual to only being able to perform sedentary jobs would overstate her limitations. Moreover, since the DOT does not have an exertional level between sedentary and light, if there were a job that required lifting 15 pounds it would have to be classified as light. It could not be classified as sedentary, because an individual who could only lift 10 pounds would

not be able to perform it.  The VE's testimony is properly seen as a refinement of the DOT's classification.  Given this context, the Court finds the VE's reliance on his experience a sufficient reason to find that an individual who can lift 15 pounds could perform these jobs, notwithstanding the DOT's classification of these jobs as "light" work.  *See, e.g.*, *Johnson*, 60 F.3d at 1436 (finding it was "proper for the ALJ to rely on expert testimony to find that the claimant could perform the two types of jobs the expert identified, regardless of their classification by the DOT as 'light'").[8]

### D.    The ALJ's Consideration of Plaintiff's Subjective Symptom Testimony

#### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony, the ALJ is required to engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted).  At this step, the claimant is merely required to show that their impairment "could reasonably have caused some degree" of their symptoms.  *Vasquez*, 572 F.3d at 591 (citation omitted).  The claimant is not required to demonstrate that their impairment "could reasonably be expected to cause the severity" of the symptoms they allege.  *Id*.

Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of their symptoms by offering "specific, clear, and convincing reasons for doing so."  *Lingenfelter*, 504 F.3d at 1036.[9] "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by

---

[8] Since the Court rejects Plaintiff's premise that a limitation to lifting only 15 pounds was equivalent to a limitation to sedentary work, the Court also rejects Plaintiff's argument that Plaintiff should be deemed disabled under 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 201.14, as that argument relies on the rejected premise.  *See* Pl.'s Am. Mem. at 6-7.

[9] The Commissioner states an objection for the record to the Ninth Circuit's "clear and convincing" standard but recognizes that this Court is bound by Ninth Circuit authority.  *See* Def.'s Mot. at 22 n.5.

substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citation omitted).

### 2. Analysis

Plaintiff testified that she cannot work due to pain in her back, knee, hips, neck and shoulders, as well as anxiety and panic attacks. AR 48-51. She noted particular difficulty with sitting, lifting, standing, and walking. AR 64, 66-70, 274. The ALJ summarized Plaintiff's testimony regarding her impairments and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 21. The ALJ then proceeded to assess an RFC for Plaintiff that was inconsistent with Plaintiff's testimony, in particular Plaintiff's testimony about her difficulty lifting, sitting, standing, and walking. *Compare* AR 20, *with* AR 64, 66-70, 274. Since the ALJ did not find that Plaintiff was malingering,[10] the ALJ was required to provide "specific, clear and convincing" reasons for doing so. *Lingenfelter*, 504 F.3d at 1036. As discussed below, the Court finds that the ALJ has provided a sufficiently specific, clear, and convincing reason to discount Plaintiff's testimony regarding the intensity and frequency of her panic attacks, but has not provided any specific, clear, and

---

[10] The ALJ did note that Dr. Ojelade gave Plaintiff a primary diagnosis of malingering, but that was in the context of discussing the weight to give to Dr. Ojelade's opinions. AR 26. The ALJ did not adopt this diagnosis or reference it in discussing Plaintiff's subjective testimony. Instead, the ALJ merely noted that Dr. Ojelade's diagnosis of malingering was, "*at least in part*, consistent with [Dr. Ojelade's] contemporaneous observations" and then went on to adopt the more restrictive limitations found by Dr. Caruso-Radin. AR 26 (emphasis added).

United States District Court
Northern District of California

convincing reasons for discounting any other portion of Plaintiff's testimony.

The ALJ provided four reasons for discounting Plaintiff's subjective testimony: (1) there are repeated physical examinations in the record finding either no tenderness and normal range of motion or tenderness but 5/5 strength; (2) Plaintiff's physical conditions were treated "conservatively, with medication"; (3) Plaintiff's psychiatric treatment records do not support her allegations of "significant and close to debilitating panic attacks"; and (4) Plaintiff's alleged symptoms are inconsistent with her other activities. AR 27-28.[11]

First, with regard to the physical examinations in the record, the ALJ acknowledged that there were many examinations that did show tenderness and/or reduced range of motion. *See* AR 27, 373, 1252, 1310, 1390, 1432, 1443-44, 1450, 1654. The ALJ has made no effort to explain exactly how some exams showing tenderness and/or reduced range of motion, along with some exams showing no tenderness or reduced range of motion, and other exams showing tenderness but full strength, are incompatible with Plaintiff's testimony. *See* AR 27. The ALJ's blanket citation of some physical exams with less severe findings is a far cry from a "specific, clear and convincing" reason to discredit any particular portion of Plaintiff's testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which [symptom] testimony is not credible and what evidence suggests the complaints are not credible."); *see also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").

Next, the ALJ's claim that Plaintiff's physical impairments were treated "conservatively, with medications," AR 27, is not supported by the record. As the ALJ notes elsewhere in the opinion, in addition to narcotic pain medication, Plaintiff also received epidural steroid injections. *See* AR 27, 404, 1445, 1451. It is unclear whether such treatment should be considered

---

[11] The Commissioner's brief cites additional reasons to discount Plaintiff's testimony that were not relied on by the ALJ in discounting Plaintiff's testimony. *See* Def.'s Mot. at 13-17. The Court will not address those reasons, since, as already explained, reasons not given by the ALJ cannot support the ALJ's decision. *Bray*, 554 F.3d at 1225.

"conservative," even in the abstract. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."); *Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]dministration of serious pain medication, such as Vicodin, might not properly be characterized as mere conservative treatment." (internal citation omitted)). But even if this treatment could be considered conservative in the abstract, the ALJ would still need to show that there were more aggressive treatment options available to Plaintiff, in order to discount Plaintiff's testimony on this basis. *Cortes*, 2016 WL 1192638, at *4 ("[A]n ALJ errs in relying on conservative treatment if 'the record does not reflect that more aggressive treatment options are appropriate or available.'" (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)). The ALJ did not identify more aggressive treatment options that were available to Plaintiff. *See* AR 27. Accordingly, the ALJ's characterization of Plaintiff's treatment for her physical conditions as "conservative" is insufficient to discount Plaintiff's testimony. *Cortes*, 2016 WL 1192638, at *4.

Turning to Plaintiff's mental impairments, the ALJ stated that Plaintiff's psychiatric treatment records do not support Plaintiff's testimony regarding her panic attacks because the records show that there was a two-year period in which Plaintiff received no psychiatric treatment, after which she received sporadic, generally conservative treatment, and the treatment notes do not report significant panic attacks. AR 27. The Court finds only the last reason to be "specific, clear and convincing." With regard to the two-year gap and sporadic treatment, both Plaintiff's testimony and the treatment records indicate that these gaps were because of a lack of health insurance and Plaintiff's travel to Georgia to care for her mother. AR 54, 353, 358, 1766, 1775. An ALJ cannot discount a Plaintiff's testimony based on a failure to seek treatment without analyzing the potential reasons for that failure. *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record [based on lack of treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). Here, the ALJ did not analyze the reasons Plaintiff gave for the gaps in her

treatment, AR 27, so the ALJ erred in relying on those gaps to discredit Plaintiff's testimony. As for the ALJ's claim that Plaintiff's mental health treatment was "conservative," AR 27, this claim is once again somewhat belied by the record, given that Plaintiff has twice been admitted to a psychiatric facility for treatment, AR 55-56, 340-48, 1788. Moreover, the ALJ once again failed to identify more aggressive treatment options available to Plaintiff. AR 27; *Cortes*, 2016 WL 1192638, at \*4 ("[A]n ALJ errs in relying on conservative treatment if 'the record does not reflect that more aggressive treatment options are appropriate or available.'" (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

On the other hand, the Court agrees with the ALJ that Plaintiff's testimony that she suffers panic attacks that last half an hour or more 20 times per month is inconsistent with the psychiatric treatment notes that do exist. While there are some mentions of panic attack symptoms in the treatment notes, the narrative descriptions of her symptoms do not describe severe panic attacks. *See* AR 353 ("Patient reports feeling persistently depressed most of the time, reports anhedonia, increased crying spells, low energy, difficulty with initiating and maintaining sleep, decreased appetite, problem with focus and concentration."); 356 ("Reports of frequently crying, anxious, poor sleep, low appetite, low energy, sleeping 3-4 hours a night, nightmares related to abuse."); 1247 ("Claimant noted depressive symptoms beginning 2011 to present times that include depressed mood most of the day, nearly every day, social isolation, irritability, and tearfulness."); 1757 ("Patient reports feelings really depressed [sic], hopeless, helpless, reports difficulty with sleep, decreased appetite."); 1765 ("Patient reports that the holidays were difficult for her and she is also currently in pain due to a dental procedure[.] She continues to struggle with a depressed mood and anxiety."); 1775 ("Patient . . . reports that she feels less anxious, less depressed. Denies any paranoid ideations. Reports that she is feeling more hopeful. Reports improvement in her self-care."). The Court finds this reason sufficient to meet the specific, clear, and convincing standard required to discount Plaintiff's testimony about the frequency and intensity of her panic attacks. However, this reason is clearly inapplicable to Plaintiff's other symptom testimony, including her depression, anxiety, and her physical impairments.

The last reason given by the ALJ for discounting Plaintiff's testimony was that her

testimony was inconsistent with her other activities. AR 27-28. The ALJ cited the following

activities as inconsistent with Plaintiff's testimony: (1) Plaintiff reported in August 2014 that she

had lost almost thirty pounds due to increased activity; (2) Plaintiff declined part-time or modified

work duty in August 2014; (3) August 2014 records reported that Plaintiff was exercising five

days per week for one plus hour at a time; (4) September 2014 treatment notes indicated that

Plaintiff was working and walking ten hours per day; (5) in October 2016 and January 2017,

Plaintiff traveled to Georgia to be with her mother; (6) Plaintiff reported to Dr. Ojelade that she

was fired from her last job, rather than that she stopped working because of her impairments; and

(7) in December 2017 Plaintiff sought treatment for pain in her left groin muscle and said she had

"been busy running after [the claimant's] granddaughter." AR 27-28. The Court finds none of

thus reasons sufficient to meet the specific, clear, and convincing standard.

First, the Court notes that all of the first four reasons cited by the ALJ relate to periods of

time prior to Plaintiff's amended alleged onset date of May 18, 2015. *See* AR 27, 42-43. The ALJ

has not explained why Plaintiff's level of activity eight or nine months prior to the amended

alleged onset date is dispositive of Plaintiff's functioning on or after the amended alleged onset

date.[12] Even putting this issue aside, none of these reasons are persuasive. The treatment records

indicate that Plaintiff's weight loss occurred over the year-and-a-half prior to August 2014. AR

403. The majority of this year-and-a-half was prior to Plaintiff's workplace injury in April 2014,

which eventually led to her seeking disability. *See* AR 1377. This weight loss over a long period

of time prior to Plaintiff's amended alleged onset date and largely prior to Plaintiff's workplace

injury is irrelevant to Plaintiff's ability to work as of the amended alleged onset date. Similarly,

---

[12] The ALJ's decision states that she "considered the proposed amended alleged onset date of May 18, 2015" but would "evaluate the record from the original alleged onset date of June 1, 2014" because the amended alleged onset date "was presented in the context of an assumption or assertion by the claimant's representative that a Fully Favorable decision would be granted from such date based upon the argument presented in the [pre-hearing] brief." AR 15. It is unclear to the Court what this means. Although Plaintiff's representative did submit a pre-hearing brief stating the amended alleged onset date, AR 323, Plaintiff personally confirmed that she agreed to amending the alleged onset date at the hearing, on the record and after consultation with her representative, AR 42-43. The ALJ also accepted the amendment on the record. AR 43. The Commissioner acknowledges in his brief that the alleged onset date was amended to May 18, 2015. Def.'s Mot. at 1. Accordingly, the Court analyzes the ALJ's reasoning based on the amended alleged onset date of May 18, 2015.

while the ALJ cites an August 2014 record with a notation that Plaintiff was exercising five times per week for an hour at a time, a cursory review of that record shows that the notation about exercise came from a social history taken at a prior visit, in March 2014, once again, prior to Plaintiff's workplace injury and thus completely irrelevant. AR 2056. As for the fact that, in September 2014, prior to the amended alleged onset date, Plaintiff stated that she was working and walking 10 hours per day, the ALJ fails to mention that this was part of Plaintiff's failed attempt to return to work, after having taken a personal leave to try to recover from her injuries, and Plaintiff told her doctor that this working and walking 10 hours per day was "killing her." AR 393, 1376-77. Lastly, the fact that, in August 2014, Plaintiff chose to take personal leave in order to try to recover from her injuries, instead of returning to work on a part-time or modified basis, is not a reason to discount Plaintiff's testimony, as this fact is entirely consistent with Plaintiff's testimony that she is unable to work. AR 1377, 2008.[13]

The Court also rejects the three remaining reasons cited by the ALJ. While it is true that Plaintiff traveled to Georgia on multiple occasions to visit her mother, Plaintiff testified that she did this because her mother was deathly ill and that the travel was extremely painful for her. AR 54, 72-74. Plaintiff explained that, in order to make the trip to Georgia, she had to use a wheelchair in the airport, move around on the flight whenever allowed, take Tylenol, and spend a couple days recuperating after traveling. AR 72-74. The ALJ acknowledged this testimony, but then apparently chose to ignore it because Plaintiff told her doctor that traveling to Georgia was therapeutic for her. AR 27. The ALJ failed to mention, though, that this statement was to Plaintiff's psychiatrist, at a mental health appointment, in the context of discussing Plaintiff's mental health symptoms, not her physical ailments. AR 1775, 1782. There is nothing inconsistent about Plaintiff's statements that traveling to Georgia was mentally therapeutic and physically painful.

---

[13] The Court notes that the ALJ paradoxically cited *both* the fact that Plaintiff turned down modified work at one point in time *and* the fact that Plaintiff accepted modified work at another point in time (even though it was "killing her") as reasons to discredit Plaintiff's testimony. AR 27, 393, 1376-77, 2008. The Court rejects both these reasons individually and also rejects the ALJ's unfair "no-win" framework for claimants offered modified work.

Turning to Dr. Ojelade's notation that Plaintiff was fired from her last job, AR 1246-47, it is clear from Plaintiff's testimony that when Plaintiff told Dr. Ojelade she was fired from her job for reporting sexual harassment, she was referring to her second-to-last job, at the Oakland Coliseum, not her last job at the Amazon warehouse. *See* AR 43-47. The medical records are equally clear that Plaintiff left her job at the Amazon warehouse because of her physical impairments. AR 1415-16. It is unclear if Plaintiff misspoke or if Dr. Ojelade misunderstood Plaintiff or failed to accurately transcribe their conversation, but this easily explained minor inconsistency is not a basis to discredit any of Plaintiff's testimony.

The last reason given by the ALJ for discrediting Plaintiff's testimony was a single statement made by Plaintiff to her doctor in December 2017 that she "[h]as been busy running after granddaughter." AR 28, 1627. Without any further context, this off-hand, colloquial expression for caring for a small child is not a "specific, clear and convincing" reason to discredit any of Plaintiff's testimony. The Court therefore rejects all of the reasons given by the ALJ for discounting Plaintiff's testimony, except to the extent the ALJ discounted Plaintiff's testimony about the intensity and frequency of her panic attacks.

### E.    The ALJ's Consideration of Lay Witness Testimony

An ALJ must take a lay witness's testimony about a claimant's symptoms into consideration unless the ALJ expressly discounts the testimony and provides "reasons germane to each witness" for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds by regulation*. The ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

The lay witness testimony at issue in this case came from Plaintiff's daughter, who submitted a third-party function report that described very similar limitations to the limitations described by Plaintiff herself. *See* AR 278-85. The ALJ gave this testimony "some weight" but found that Plaintiff was not as limited as her daughter's report alleged. AR 26-27. The reasons cited by the ALJ for discounting this testimony are identical to some of the reasons cited by the

ALJ for discounting Plaintiff's own testimony.  AR 26-27.  The Court has already found that the reasons cited by the ALJ for discounting Plaintiff's testimony on these points does not meet the "specific, clear and convincing" standard for discounting a claimant's testimony.  *See* § IV.D.2, *supra*.  The Court need not reach whether these same reasons also fail under the less-demanding test for rejecting lay witness testimony, since the testimony, if credited, would be duplicative of Plaintiff's testimony anyway.

###     F.    Remedy

A district court may "affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'"  *Garrison*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)) (emphasis omitted).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  On the other hand, the court may remand for award of benefits under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "there are [no] outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would [not] be useful"; and (3) "on the record taken as a whole, there is no doubt as to disability."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citations and internal quotation marks omitted); *see also Garrison*, 759 F.3d at 1021 (holding that a district court abused its discretion in declining to apply the "credit as true" rule to an appropriate case).  The "credit-as-true" rule does not apply "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," *Garrison*, 759 F.3d at 1021, or when "there is a need to resolve conflicts and ambiguities," *Treichler*, 775 F.3d at 1101.

Here, the Court awards benefits under the credit-as-true rule.  The Court has found that the ALJ gave legally insufficient reasons for rejecting Dr. Cain's opinion that Plaintiff would have difficulty with prolonged sitting, standing, and walking.  *See* § IV.B.2.a, *supra*.  The Court has also found that the ALJ gave legally insufficient reasons for rejecting Plaintiff's testimony that she can only bear standing for up to 45 minutes to an hour at a time, but tries to limit her time standing to

no more than 15 minutes at a time, and she could not stand for 15 minutes at a time off and on all day. *See* § IV.D.2, *supra*; AR 67-70. The VE testified that if the limitation of needing to change positions every 45 minutes to an hour was added to Plaintiff's RFC, then there would be no jobs that Plaintiff could perform. AR 81-86. Crediting Dr. Cain's opinion and Plaintiff's testimony as true, and in light of the VE's testimony, there are no additional issues that need to be resolved in order to find Plaintiff disabled. The Court does not find this to be a case where the record creates a "serious doubt" about whether Plaintiff is actually disabled. The Court therefore remands for award of benefits.[14]

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Judgment, and REMANDS for award of benefits.

**IT IS SO ORDERED.**

Dated: June 1, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

[14] In opposing a remand for award of benefits, the Commissioner's brief appears to rely mainly on Dr. Ojelade's opinion that Plaintiff was malingering. *See* Def.'s Mot. at 18. The Court does not find that this opinion warrants further proceedings. Even the ALJ that denied benefits did not fully credit this finding of malingering. *See* AR 26. In any event, this finding was with regards to Plaintiff's mental limitations, AR 1246-50, and the Court finds a remand for award of benefits is warranted based on Plaintiff's physical impairments, so there is no need to resolve any conflicts regarding Dr. Ojelade's opinion.